## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | |
|---|---|
| CARY P. DENNIS,<br>ADC #167050,<br><br>        Plaintiff,<br>v.<br><br>FAULKNER COUNTY<br>SHERIFF OFFICE; *et al.*,<br><br>        Defendants. | No. 4:17cv00212-JJV |

## **MEMORANDUM AND ORDER**

### I. INTRODUCTION

Cary P. Dennis ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983. (Doc. No. 2.) He alleges Defendants, officials at the Faulkner County Detention Center, failed to protect him from attacks by other detainees. (*Id*. at 5-7.) Defendants Gunter, Humphrey, Scott Huffman, Fisher, John Randal, Phillips, and Harris[1] have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 26.) Plaintiff has responded (Doc. No. 31) and this matter is now ripe for a decision. After careful review, and for the following reasons, I find summary judgment is appropriate. Plaintiff's Complaint is DISMISSED.

### II. FACTS

Plaintiff was booked into the Faulkner County Detention Center on July 16, 2016. (Doc. Nos. 2 at 5, 28-1 at 5.) According to his Complaint and his Affidavit in support of his Response to Defendants' Motion for Summary Judgment, he requested protective custody at intake due to

---

[1] Plaintiff's claims against Defendants Faulkner County Sheriff Office and Faulkner County Detention Center were previously dismissed without prejudice. (Doc. Nos. 5, 15.)

his charges, which included computer child pornography, and this request was denied. (Doc. Nos. 2 at 5, 32 at 1, 28-1 at 9.) According to the Affidavit of Defendant Huffman, a lieutenant at the detention center, Plaintiff did not request protective custody. (Doc. No. 28-1 at 2.) It is undisputed that Plaintiff was held in a booking cell over the weekend of his arrest and then moved into general population. (Doc. No. 2 at 5.)

On July 25, 2016, Plaintiff was attacked by another detainee and transported to the emergency room of a local hospital, where he received eleven stitches across his nose and face. (*Id*. at 5-6.) According to Plaintiff's Complaint and Affidavit, the detainee who attacked him had learned about Plaintiff's charges when they were read aloud during Plaintiff's first appearance, which was held by video conference. (*Id*. at 5, Doc. No. 32 at 1.) According to Defendant Huffman's Affidavit, he spoke to Plaintiff after the attack and Plaintiff told him he did not know who had struck him or why. (Doc. No. 28-1 at 2.) When he returned from the hospital, Plaintiff was placed in protective custody. (Doc. No. 2 at 6.) Defendant Huffman states he took this precaution because he could not determine the identity of Plaintiff's assailant or the reason for the attack, and he also took into account Plaintiff's charges. (Doc. No. 28-1 at 2.) Plaintiff remained in the protective custody section of Unit 1 until November 2016, when all detainees in protective custody and medical cells were moved to "a special section – section 9 – of general population" at Unit 2. (Doc. No. 2 at 6.)

On November 16, 2016, Plaintiff was again attacked by another detainee. (*Id*.) He states this attack was severe and nearly killed him. (*Id*.) A CT scan at the emergency room revealed bleeding in his brain, and he was transported to UAMS, where he spent four days in the ICU. (*Id*.) His medical records show he sustained a large facial hematoma, intraventricular hemorrhage, and a nasal bone fracture. (Doc. No. 33 at 20, 36.) According to Defendant Huffman's Affidavit, the

2

detainee who attacked Plaintiff was also in protective custody. (Doc. No. 28-1 at 2.) Defendant Huffman spoke with Plaintiff after the attack, and Plaintiff claimed to have no idea why this detainee would have attacked him. (*Id.*) Plaintiff later theorized the attack was orchestrated by two other detainees who had stolen commissary items from him and planned the attack to cover up their theft. (Doc. No. 28-1 at 49, 53.) Upon his return from UAMS, Plaintiff was held in a single-person cell in the booking area for three and a half weeks while his injuries healed. (Doc. No. 2 at 6.) He was then moved to section 15, which had been designated the special section to house protective custody and medical detainees. (*Id.*)

Plaintiff alleges he was subjected to "daily endangerment by certain jail officers/guards" after being moved to section 15. (*Id.*) He states officers repeatedly allowed general population detainees access to protective custody detainees, subjecting them to attack. (*Id.* at 7.) Specifically, officers opened doors to general population sections at times when protective custody detainees were allowed out of their section to use the bathroom or visit the guard desk. (*Id.*) Plaintiff alleges Defendants Gunter, Humphrey, and Harris sometimes called him to the guard desk to have his vitals checked while general population detainees were out of their sections; consequently, Plaintiff chose to stop having his vitals checked at those times. (*Id.*)

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.     ANALYSIS

### A.     Official Capacity Claims

Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. Thus, Plaintiff's official capacity claims against Defendants are to be treated as claims against Faulkner County. Section 1983 liability against municipalities and other local government units is limited:

4

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id*. at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Faulkner County that caused or contributed to his alleged injuries. In fact, he contends officials violated jail policy by allowing contact between protective custody detainees and general population detainees. (Doc. No. 2 at 7.) Because Plaintiff makes no allegation that Defendants were implementing an unconstitutional policy or custom, his official capacity claims against them must be dismissed.

    **B.**    **Personal Capacity Claims**

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 27 at 3.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)

(the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*. Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates and to protect them from violence at the hands of other inmates. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). An Eighth Amendment claim for failure to protect is comprised of two elements. *Riley v. Olk-Long*, 282 F.3d 592, 595 (8th Cir. 2002). First, an inmate must show he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. (citing *Farmer*, 511 U.S. at 834). This objective requirement ensures the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension. *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996). Second, the inmate must establish prison officials recklessly disregarded that risk. *Riley*, 282 F.3d

6

at 595.  For purposes of failure-to-protect claims, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  *Hott v. Hennepin Cty., Minn.*, 260 F.3d 901, 906 (8th Cir. 2001) (quoting *Farmer*, 511 U.S. at 843).  The question is whether a prison official has a "sufficiently culpable state of mind," meaning he is deliberately indifferent to an inmate's safety.  *Riley*, 282 F.3d at 595 (quoting *Farmer*, 511 U.S. at 834).  The prison official's state of mind is measured by a subjective, rather than an objective, standard.  *Id*.  He must both know of and disregard an excessive risk to inmate safety; in other words, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

According to Plaintiff's Complaint, he was a pretrial detainee at the time of the attacks. (Doc. No. 2 at 4.)  Accordingly, his claims are not analyzed under the Eighth Amendment, but instead under the Fourteenth Amendment's Due Process Clause.  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).  "This makes little difference as a practical matter, though:  Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."  *Id*. (citing *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)).

Even assuming Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, he has failed to establish Defendants knew of an excessive risk to his safety and disregarded it.  According to Defendant Huffman's Affidavit, neither he nor any of the other named Defendants had any notice of any risk to Plaintiff, other than the risks inherent in incarceration, prior to either of the attacks.  (Doc. No. 28-1 at 3.)  He states Plaintiff never mentioned any risk, either verbally or in writing.  (*Id*.)  Plaintiff "expressed genuine surprise and confusion" about the

7

attacks and "certainly did not appear to know that he was going to be assaulted before the incidents." (*Id.*) Plaintiff fails to meet proof with proof and show a genuine issue of fact exists regarding Defendants' knowledge of an excessive risk to his safety.

Plaintiff does raise the issue of his housing. The first attack occurred while Plaintiff was housed in general population, and Plaintiff alleges the detainee who attacked him knew about his charges. (Doc. No. 2 at 5.) The implication is that this detainee attacked him because of his charges and that Plaintiff should have been in protective custody due to the nature of his charges. But this implication is not supported by sufficient probative evidence that would permit a finding in Plaintiff's favor on more than mere speculation, conjecture, or fantasy. *Mann*, 497 F.3d at 825. Plaintiff alleges he requested protective custody at intake; Defendant Huffman alleges he did not. (Doc. Nos. 28-1 at 2, 32 at 1.) I must resolve this factual dispute in Plaintiff's favor and assume he did request protective custody. *See Naucke*, 284 F.3d at 927. Nonetheless, Defendant Huffman also states Plaintiff had not "raised any concerns about any risks to his safety from any particular inmate, his housing situation, or any factor" prior to the attack. (Doc. No. 28-1 at 2.) He also states Plaintiff did not know who had attacked him or why. (*Id.*) Plaintiff has not rebutted this evidence, and he has not come forward with evidence of his own showing he was at risk of attack because of the nature of his charges and the other detainees' knowledge of them. *See Farmer*, 511 U.S. at 848-49 (prisoner's failure to notify officials of a risk of harm was not dispositive where evidence showed officials were made aware of the risk by other means). Without more, the mere fact that Plaintiff was charged with computer child pornography is not enough to show Defendants disregarded an excessive risk to his safety by placing him in general population.

The second attack occurred while Plaintiff was in protective custody,[2] and the detainee who attacked him was also in protective custody. (Doc. No. 28-1 at 2.) Therefore, the suggestion that Plaintiff was improperly housed does not apply. As with the first attack, Plaintiff was not immediately aware of the cause and had not expressed any concerns prior to this attack about any risks to his safety from any particular inmate. (*Id.*) Plaintiff's theory that the attack was orchestrated by two other detainees who had stolen his commissary items does not show Plaintiff was exposed to any known or knowable risk. The Eighth Circuit has consistently held "that prison officials are entitled to qualified immunity from § 1983 damage actions premised on an Eighth Amendment failure-to-protect theory when an inmate was injured in a surprise attack by another inmate." *Curry v. Crist*, 226 F.3d 974, 978-79 (8th Cir. 2000).

Additionally, although Plaintiff alleges he was frequently exposed to general population detainees even in protective custody, these incidents all occurred *after* the July 2016 and November 2016 attacks. (Doc. No. 2 at 6-7.) Plaintiff has not alleged that exposure led to any attack, on him or anyone else. Moreover, the incident reports concerning the July 2016 and November 2016 attacks show officers responded immediately, breaking up the altercations and sending Plaintiff promptly to the hospital for medical attention. (Doc. No. 28-1 at 8.) "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

---

[2] Although Plaintiff characterizes section 9 as being part of general population, it was clearly a designated, contained section for protective custody detainees and those with medical issues. (Doc. No. 2 at 6.)

9

For these reasons, Plaintiff has failed to show Defendants violated his constitutional rights by disregarding a known risk to his safety. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities.

**V.     CONCLUSION**

IT IS, THEREFORE, ORDERED that:

1.     Defendants' Motion for Summary Judgment (Doc. No. 26) is GRANTED.

2.     Plaintiff's claims against Defendants Gunter, Humphrey, Scott Huffman, Fisher, John Randal, Phillips, and Harris are DISMISSED with prejudice, and Plaintiff's cause of action is dismissed.

3.     Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or accompanying Judgment would not be taken in good faith.

DATED this 5th day of January, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE